## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal Action No.  24-279 |
| v. | ) | |
| | ) | |
| | ) | |
| DALONTE THOMAS, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

### I.  Introduction

Defendant Dalonte Thomas ("Thomas") filed a motion to dismiss the indictment due to a speedy trial violation (ECF No. 24).  The government filed a response in opposition to the motion (ECF No. 29).  For the reasons set forth on the record, the court orally denied the motion after a hearing and argument on August 20, 2025.[1]  This opinion more thoroughly sets forth the basis for the court's decision.  Jury selection and trial is set for October 1, 2025.

### II.  Factual and Procedural Background

As relevant to the speedy trial motion, the chronology of events is as follows:

a.  October 5, 2024 – local police conducted a controlled buy, recovered a firearm and arrested Thomas; state criminal charges were filed, including a charge for felon in possession of a firearm, and Thomas was detained on the state criminal charges;

b.  October 5, 2024 – a state probation detainer was filed because Thomas was on state supervision at the time, which remains in effect and Thomas remains in the primary custody of the Commonwealth of Pennsylvania;

---

[1] The court also ruled on the other pretrial motions filed by Thomas (ECF Nos. 25-28).

c.  December 17, 2024 – Thomas was indicted in federal court (on one count, felon in possession of firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1));

d.  December 18, 2024 – federal arrest warrant issued and lodged as a detainer;

e.  December 19, 2024 – all state criminal charges were dismissed;

f.  February 20, 2025 -   a United States probation officer sent an email to the Assistant United States Attorney ("AUSA") to report that the state charges were dismissed, although notification is typically provided by the United States Marshal;

g.  March 10, 2025 – the AUSA returns from overseas travel (without access to work emails)[2] and receives the email about the state criminal charges being dismissed;

h.  March 10 to April 22, 2025 -  unexplained delay;

i.  April 22, 2025 -       AUSA files a motion for writ ad prosequendum;

j.  April 25, 2025 –       motion for writ granted;

k.  April 28, 2025 -       writ issued;

l.  May 6, 2025 -          CJA financial affidavit filed by Thomas;

m.  May 22, 2025 -          initial appearance before United States Magistrate Judge,

n.  May 28, 2025 -          arraignment, not guilty plea, defense counsel makes an oral motion for a 45-day extension of the Speedy Trial Clock and pretrial motions deadline, motion granted (ECF Nos. 18, 19);

o.  July 14, 2025 – Thomas' pretrial motions filed (including a motion to dismiss based on a speedy trial violation);

p.  July 24, 2025 – government response filed; and

q.  August 20, 2025 – hearing on motion and oral order denying motion.


III. Discussion

Thomas seeks dismissal of the indictment based on the length of time between the federal indictment (December 17, 2024) and the date the federal government filed a writ to secure his appearance in federal court (April 22, 2025), a period of slightly more than 4 months. The court finds, and Thomas agrees, that there has been no undue delay since April 22, 2025. The timing of the initial appearance in federal court, the Speedy Trial continuance requested by Thomas, and the briefing and resolution of Thomas' pretrial motions are all in accord with typical practice in this court. The focus, therefore, is on the delay prior to his initial appearance in federal court.

---

[2] The AUSA left a message providing an alternative contact, who was not contacted by the probation officer.

Thomas seeks dismissal on three grounds:  (1) the Speedy Trial Act, 18 U.S.C. § 3161;

(2) the Sixth Amendment to the United States Constitution; and (3) Federal Rule of Criminal

Procedure 48.  The court will address each theory.

        A.      Speedy Trial Act

The Speedy Trial Act provides, in relevant part:

> (c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant
> charged in an information or indictment with the commission of an offense shall
> commence within seventy days from the filing date (and making public) of the
> information or indictment, or from the date the defendant has appeared before a
> judicial officer of the court in which such charge is pending, **whichever date last
> occurs**.

18 U.S.C. § 3161(c)(1) (emphasis added).

Under most circumstances, the protections of the Speedy Trial Act "exceed those of the

Sixth Amendment." *United States v. Bowes*, No. 1:21-CR-39, 2025 WL 490546, at *1 n.1 (W.D.

Pa. Feb. 13, 2025).  This case, in which Thomas challenges a delay prior to his initial

appearance, involves a rare situation in which that general rule does not apply.  The statutory text

of the Speedy Trial Act bars Thomas' argument.  The statute clearly provides that delay must be

measured from the LATER of indictment or initial appearance.  Here, the event that last occurred

was the initial appearance on April 28, 2025.  There has been no undue delay since that date.

Thomas' reliance on a magistrate judge's report and recommendation ("R&R") in *United

States v. Benatta*, No. 01-CR-247E, 2003 WL 22202371 (W.D.N.Y. Sept. 12, 2003), is

misplaced.  The magistrate judge recommended that the plain language of the Speedy Trial Act

be ignored under the facts of that case:

> The very purpose of the STA would be defeated if the government is allowed to
> prevent the arraignment of the defendant by holding him in its custody and at the
> same time claim that the speedy trial clock has not started because the defendant
> has not been arraigned. The provision set forth in 18 U.S.C. § 3161(c)(1) as to
> when the seventy day period commences is meant to apply to those circumstances

wherein the defendant is not available for arraignment after an indictment has been returned and filed or where the defendant has caused the delay in his arraignment.

*Id.* at *12.

That discussion is nonbinding, dicta, and not persuasive under the facts of this case. A decision from a district court in New York is not binding on this court. More substantively, the R&R was primarily based on a Sixth Amendment violation, *see id.* at *8-12; the discussion of the Speedy Trial Act was merely presented as an alternative "[i]f the District Judge elects not to accept the recommendation of this Court to dismiss the indictment on Sixth Amendment grounds." *Id.* at *12.

The factual circumstances in *Benatta* were "bizarre," *id.*, and far different from the situation in this case. The defendant in *Benatta* was an Algerian avionics technician. His visa expired and he attempted to enter Canada using false identification on September 5, 2001, and was detained. After the horrific events of 9/11, Canadian authorities alerted the United States about Benatta and his similarity to the profiles on the terrorists. Benatta was turned over to United States Immigration custody on September 12, 2001; interrogated by the FBI; spirited off to a Bureau of Prisons facility without access to counsel; and kept there under April 30, 2002 (a period of more than 7 months). The magistrate judge found that Benatta's detention, purportedly by immigration officials, was a ruse designed to avoid the Speedy Trial Act. Benatta was indicted in December 2011 and charged with possessing a fake identification document. The guideline range of imprisonment, if convicted, was 0 to 6 months and Benatta was eligible for probation. The magistrate judge found that Benatta was deprived of his liberty and held in federal custody -- prior to his initial appearance -- for longer than the high end of the applicable guideline range if he was convicted.

Those sympathetic circumstances are largely absent here. The court recognizes that Thomas "fell through the cracks" and the normal and timely notification of the dismissal of state charges did not occur. The court appreciates the anxiety that resulted when his mother was unable to determine whether he was in Pennsylvania or federal custody for several months. Unlike in *Benatta*, however, there is no evidence in this case of a ruse designed to evade the Speedy Trial Act and the parties agreed the detention did not exceed the low end of the applicable advisory guideline range. There was a negligent lack of coordination or lack of diligence between the state and federal authorities and among the United States Marshal, the probation officer and the AUSA. The resulting delay was slightly over 4 months. Thomas' liberty interest was not implicated because he remained in state custody on the probation detainer for the entire period of time. In sum, the court is not persuaded that the plain language of the Speedy Trial Act should be disregarded under the facts and circumstances of this case.

B.     Sixth Amendment and Rule 48

The Sixth Amendment to the United States Constitution provides, in relevant part, that "the accused shall enjoy the right to a speedy and public trial." Federal Rule of Criminal Procedure 48(b) provides:

> (b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>     (1) presenting a charge to a grand jury;
>     (2) filing an information against a defendant; or
>     (3) bringing a defendant to trial.

The Supreme Court recognizes that the Sixth Amendment right to a speedy trial is a "more vague concept than other procedural rights," and its boundaries cannot be defined by a precise period of time. *Barker v. Wingo*, 407 U.S. 514, 521 (1972). In *Hunt v. United States*,

456 F.2d 582, 584 (3d Cir. 1972), the court stated: "An indictment should not be dismissed unless there has been deliberate or oppressive action by law enforcement officials." *Id.*  The court concluded that the indictment would not be dismissed in that case because the "record has failed to demonstrate or disclose bad faith, purposeful delay, oppressive action or material prejudice." *Id.*

The court will analyze the Sixth Amendment and Rule 48 theories together because, in both situations, courts use the same four "*Barker* factors."  The parties agree that the factors in *Barker* apply.  The factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 531. None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

Courts engage in a two-step analysis.  First, the court must consider whether the length of the delay is "presumptively prejudicial."  If not, the analysis ends and there is no violation.  If the delay is prejudicial, the court must consider all four factors, including the extent of the delay. The presumption of prejudice intensifies as the delay lengthens.  *Id.*

At step one, there is no fixed time to trigger presumptive prejudice.  In *Doggett v. United States*, 505 U.S. 647 (1992), the Supreme Court observed:  "Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."  *Id.* at 652 n.1.  In *Benatta*, a delay of 7 months was prejudicial where the defendant was held in custody, was eligible for probation, and his guideline range of imprisonment was 0 to 6 months.

In *Brooks v. Klinefelter*, No. CV 22-4455, 2025 WL 2151044 (E.D. Pa. June 27, 2025),

report and recommendation adopted, No. 2:22-CV-04455-JMG, 2025 WL 2250270 (E.D. Pa.

Aug. 6, 2025), the court held that a 25-month delay attributable to the government did not trigger

presumptive prejudice.  The court explained:

> the Third Circuit has indicated that prejudice is presumed where there is a delay
> of more than twenty-seven months. *See Battis*, 589 F.3d at 683 (holding that
> "prejudice will be presumed when there is a forty-five-month delay in bringing a
> defendant to trial, even when it could be argued that only thirty-five months of
> that delay is attributable to the Government."); *United States v. Shaw*, 891 F.3d
> 441, 455 (3d Cir. 2018) (noting arguendo that twenty-seven months could be
> sufficient to find presumptive prejudice); *cf. Hakeem v. Beyer*, 990 F.2d 750, 760
> (3d Cir. 1993) (holding that a fourteen-month period between arrest and trial was
> insufficient to find presumptive prejudice); *cf. Villalobos*, 560 F. App'x 124, 127
> (3d Cir. 2014) (holding that a delay of sixteen and a half months was insufficient
> to presume prejudice).

*Id.* at \*15.  As cited therein, the Third Circuit Court of Appeals has held that delays of 14 and 16

½ months are too short to trigger presumptive prejudice.  *Id.*  The defendant did not cite any

decisions in which a delay of slightly over 4 months was deemed presumptively prejudicial.  The

court concludes that Thomas did not show presumptive prejudice in this case.[3]

Even if the court were to reach step two of the *Barker* analysis, the indictment would not

be dismissed.  The first factor (length of delay) would weigh in favor of the government at this

step.  The length of delay here is far less than that normally needed to trigger presumptive

prejudice; the delay does not intensify any prejudice.  The second factor (reason for the delay)

weighs slightly in favor of Thomas.  The court will assume the entire 4+ month delay was

attributable to federal government negligence.[4] There is no evidence of bad faith, purposeful

delay, oppressive action or material prejudice.  *See Hunt*, 456 F.2d at 584.  The third factor (the

---

[3] The court notes that Thomas' liberty interest was not implicated because he remained in detention for a
state probation violation during the entire delay.

[4]  It is not clear whether some of the miscommunication about dismissal of the state charges may be
attributable to the state.

defendant's assertion of his right) is neutral.  Thomas was not appointed counsel until April 2025.  Defense counsel sought one 45-day continuance of the Speedy Trial Clock and pretrial motions deadline and promptly asserted the pending motion.  Thomas did not take any action to seek removal of the state probation detainer.

The final factor (prejudice to the defendant) weighs in favor of the government.  "Courts generally evaluate three types of prejudice that can result from an improperly delayed trial: oppressive pre-trial incarceration, anxiety and concern, and impairment of the defense."  *United States v. Villalobos*, 560 F. App'x 122, 127 (3d Cir. 2014).  Thomas was initially in custody on state charges and remained in custody on a state probation detainer.  The federal government, by practice, did not file a writ when the indictment was initially filed in December 2024 because it was "third in line" for custody behind the state prosecutors and the state probation office.  Numerous decisions have noted that coordinating multiple prosecutions in multiple jurisdictions may be a valid reason for delays.  In *United States v. Jones*, No. 22-CR-2047-CJW-MAR, 2023 WL 8005309 (N.D. Iowa Nov. 17, 2023), the court explained:

> It is true the government could have issued a writ at any time, and interrupted the state proceedings, to bring defendant to federal court. That, though, is not required for the government to avoid violating the Sixth Amendment. When offenders violate the laws of more than one sovereign government, it is obvious governments will have to wait in line to prosecute the offender. It is customary— and an appropriate exercise of comity between sovereign governments—that the sovereign holding the offender be afforded the opportunity to complete its proceedings without interference from another sovereign government by snatching the offender out of custody to be prosecuted by the other sovereign government. Thus, "simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government." *United States v. Watford*, 468 F.3d 891, 903 (6th Cir. 2006) (cleaned up). Further, states are not required to honor a federal writ of habeas corpus ad prosequendum; it is only a matter of comity when they do so. *See Ponzi v. Fessenden*, 258 U.S. 254, 261-62 (1922).

*Id.* at *4. In this case, Thomas was, and remains, in the primary custody of Pennsylvania. The delays in his initial appearance in federal court did not affect his liberty, because Thomas was detained by the state. Thomas does not assert any impact on trial preparation, such as loss of memory or witnesses. The court notes that the government reported the incident was captured on bodycam. The court does not discern any significant prejudice to Thomas that would warrant dismissal of the indictment.

IV. Conclusion

In sum, as explained on the record at the hearing and in this opinion, the court concludes that Thomas' speedy trial rights under the Speedy Trial Act, Sixth Amendment and Rule 48(b) were not violated. The motion to dismiss the indictment was denied.

Dated: August 26, 2025

**/s/ Joy Flowers Conti**
Joy Flowers Conti
Senior United States District Court Judge